UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:07-CR-35 |
| | ) | |
| TROY MEDFORD | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court for resolution of sentencing issues raised by the defendant, Troy Medford ("Medford"). Medford filed a Sentencing Memorandum on December 20, 2007 ("Defendant's Memorandum") in anticipation of his upcoming sentencing, wherein he objects to the calculation of his term of imprisonment and requests a sentence below the applicable Sentencing Guidelines range. Docket at 29. The United States of America ("the government") filed an opposition brief on February 21, 2008 ("Government's Response"). Docket at 33. In his memorandum, Medford objects to the calculation of his term of imprisonment as set forth in the Presentence Investigation Report prepared by the United States Probation Office. At the sentencing hearing on April 21, 2008, the court heard the arguments of the parties on the issues raised by Medford. After considering the briefs and the arguments of counsel, and for the reasons discussed at length in this Order, defendant's objection is OVERRULED and his request for a downward adjustment from his Sentencing Guidelines range is DENIED.

**DISCUSSION**

Medford was charged by way of an indictment filed on April 25, 2007, with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Docket at 1. Medford entered into a plea agreement with the government and entered a plea of guilty to the charge on November 6, 2007. Docket at 23. The U.S. Probation Office prepared a Presentence

Investigation Report ("PSR") concluding that Medford, pursuant to the United States Sentencing Guidelines ("U.S.S.G."), had an offense level of 17 and a criminal history category of IV. This equates to a Guidelines sentencing range of 37 to 46 months. As part of his plea agreement, the government, pending the court's approval, agreed to recommend that Medord be sentenced at the low end of the advisory Guidelines range. *See* Plea Agreement, Docket at 21, p. 3.

In his brief, Medford raises an objection to the PSR and moves the court to grant him an 8-point reduction in his base offense level (from a base offense level of 20 to a level of 12).[1] Defendant's Memorandum, p. 2. Medford argues, for the reasons discussed below, that his criminal history category is overstated and that a sentencing range of 15 to 21 months "is more appropriate and reasonable for the facts and circumstances of this particular offense." *Id*.

According to the PSR, Medford's criminal history calculation included the assessment of three criminal history points as a result of his conviction in the Elkhart County Superior Court on a charge of escape. This charge was filed in April of 1997 and Medford was sentenced to a term of imprisonment of three years in the Indiana Department of Correction. Medford's criminal history score was six, and because he was on probation on the escape conviction at the time he committed the instant offense, two additional points were added to his score pursuant to U.S.S.G. § 4A.1.1(d). That Guidelines section states, in relevant part: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Thus, because

---

[1] According to his PSR, Medford had a base offense level of 20. He then received a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and an additional one-point reduction pursuant to § 3E1.1(b) for his timely notification to the government of his intent to enter a guilty plea, leaving him at an offense level of 17.

2

Medford was on probation on the Elkhart County conviction at the time he committed the instant offense, the Probation Department properly assessed an additional two points to his criminal history calculation.

Medford does not challenge the fact that he was on probation in Elkhart County at the time he committed the offense charged in this case.  Rather, he argues that his criminal history calculation overstates the severity of his criminal history based on the facts and circumstances surrounding that state court conviction. Defendant's Memorandum, p. 1.  Medford acknowledges that under the Sentencing Guidelines, a conviction for escape is characterized as a conviction for a "violent crime."  *Id*.  Medford argues that his "previous conviction for escape appears, on its face, to involve some resistance or force simply by nature of its title.  However, in Mr. Medford's case, the escape [was] simply his failure to return to a lawful detention.  Mr. Medford did not use any force nor did he endanger any individual by his simple failure to show up."  *Id*., p. 2.  According to Medford, then, he should "have a base offense level of 12 . . ." and "the advisory sentencing Guidelines range becomes 15 to 21 months.  Such a suggested Guidelines range is more appropriate and reasonable for the facts and circumstances of this particular offense."  *Id*.

In addition to his argument for a downward adjustment in his Guidelines range, Medford also makes an argument that the court interprets as an argument for a downward adjustment pursuant to 18 U.S.C. § 3553.  Medford states in his brief that while he "certainly recognizes his culpability in the possession of the firearm as a convicted felon[.]," "an analysis of the facts surrounding his previous escape conviction and the facts surrounding the current cause, an appropriate and reasonable sentence in the discretion of the Court while utilizing the advisory

3

Guidelines, would be 15 months." *Id*.  Medford's argument, then, is twofold.  He argues that his criminal history has been overstated since his escape conviction was based on what he terms a simple failure to return to detention (as opposed to breaking out of a jail or prison for example). He also argues–at least implicitly if not explicitly–that the facts underlying his conviction in the present case overstate the seriousness of the felon in possession charge.

As to his escape conviction, there appears to be no dispute that it arose following Medford's failure to report to a work release facility in Elkhart County in October of 1996. Medford does not contend that this failure to report was the result of a legitimate mistake of fact or confusion over any court order or directive.  In fact, he doesn't explain why he failed to report to work release at that time.  He simply argues that since his escape did not involve "resistance or force," and because he did not "endanger any individual" when he failed to report, the seriousness of that offense is overstated in this case. *Id*.

As to his conduct concerning the present charge, Medford does not challenge the fact that he is a convicted felon nor does he argue that he was not in possession of a firearm.  Instead, he argues that he did not possess the firearm for any criminal purpose or nefarious intent.  Medford argues that he possessed the firearm, a Mossberg 12-gauge shotgun, for the purpose of protection.  He states that he "possessed the firearm for a rather brief period of time in an effort to insure that everyone in the house at the time would be safe." *Id*.  Medford claims that on the day he was arrested he had "handed the weapon to his son, asking his son to remove the gun from the situation.  As Mr. Medford detailed [during his change of plea hearing], he did not know that his son had placed the firearm in the pickup truck.  Thus, when Mr. Medford was stopped by law enforcement, [he] did not know the weapon was in the pickup truck.  Such was

4

his testimony under oath at the change of plea hearing." *Id*. According to the PSR, Medford and his wife had an argument on March 4, 2007. Medford knew that the Mossberg shotgun was in the couple's bedroom, so he gave it to his 15-year-old son and instructed his son to remove it from the home. Sometime later Medford and his son left their house in a pickup truck. Medford was stopped by a police officer who smelled alcohol when he approached the Medford vehicle. Medford admitted he had consumed some alcohol and he failed several field sobriety tests. Medford was arrested and subsequently charged with operating while intoxicated. He was later indicted in the present case as a result of his possession of the shotgun in the truck. Medford's argument, the court presumes, is that he did not possess the shotgun with the intent to commit any criminal act and, therefore, should receive a reduced term of imprisonment in this case.

The government argues that Medford is not entitled to any reduction in his sentence and that the advisory Guidelines range calculated by the Probation Department is accurate. The government maintains that Medford's argument regarding his prior escape charge "ignores well established Seventh Circuit Court of Appeals case law which holds that all types of escapes, including both walkaways and failures to report or return to lawful detention, are crimes of violence." Government's Response, p. 1 (citing *United States v. Bryant*, 310 F.3d 550, 554 (7th Cir. 2002) and *United States v. Franklin*, 302 F.3d 722, 725 (7th Cir. 2002)).

The government also argues that Medford's argument "for an 8 point offense level downward departure adjustment . . . is unrelated to his criminal history being overstated. Hence, there is no rational connection between the two (offense level reduction and criminal history being overstated) especially since the Seventh Circuit clearly has held escape is a crime of violence which causes Medford to be at an offense level of 20." *Id*. The government argues that

5

Medford is making a convoluted argument in an attempt to obtain a significant sentence reduction to which he is not entitled.  The government explains the issue this way:

> If the defendant feels his criminal history is overstated due to the escape conviction, then a proper request might be to seek to reduce his criminal history to a category III from IV which would totally account for the impact on his criminal history of the escape conviction.  However, this is not what the defendant seeks presumably because the sentence reduction corresponding to a criminal history reduction to category III would only be 7 months on the low end of the Guidelines range instead of the 22 month adjustment sought in his memorandum.
>
> In addition, such an adjustment to his criminal history is not warranted because the number of criminal history points assigned to the escape conviction is not tied to escape being a crime of violence, rather it hinges upon the amount of imprisonment time the defendant received on that conviction.  This remains the same whether escape is a crime of violence or not.  Therefore, Medford's criminal history is not overstated.
>
> The defendant's argument ignores clear case law, mixes apples (offense level adjustment) and oranges (criminal history overstatement), and is not reasonable or warranted based upon the law and facts of the case.

*Id*., pp. 1-2.

The government's argument is correct.  Medford ignores the difference between his offense level assessment and his criminal history score when pressing for a significant downward adjustment to his sentence.  This position is unsupported in the law, which is likely why Medford cites no authority in support of his argument.  The government is also correct that the Seventh Circuit has clearly and repeatedly held that the crime of escape is a "crime of violence" as that term is used in the Sentencing Guidelines. *Bryant*, 310 F.3d at 554 and *Franklin*, 302 F.3d at 725, *supra*; *see also*, *U.S. v. Cruz*, 254 Fed.Appx. 550 (7th Cir. 2007) (unpublished) ("[w]e have held repeatedly that all types of escapes, including both walkaways and failures to report or return to lawful detention, are categorically crimes of violence.  *See, e.g., United States v.*

*Chambers,* 473 F.3d 724, 726 (7th Cir. 2007")) (also citing *Bryant* and *Franklin*).  For these reasons, Medford's argument must fail.

The government does not address Medford's apparent argument for a reduction pursuant to 18 U.S.C. § 3553.  The court assumes that this is because Medford never cites that statute in his brief nor does he expressly state that he is seeking an adjustment under the statute.  However, as stated above, Medford at the very least alludes to an argument that the sentence he faces is unduly harsh since he possessed the shotgun for what he terms a "brief period of time" and only for the purpose of protection.  At his sentencing hearing, Medford reiterated this argument.  This argument, however, also fails.

The Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), held that the Guidelines were to be advisory, and the Court's more recent decision in *Rita v. United States,* --- U.S. ----, 127 S.Ct. 2456 (2007), confirms that, as far as the sentencing court is concerned, the Guidelines range is simply one of the several factors listed in 18 U.S.C. § 3553 that must be considered in arriving at a just sentence, "sufficient, but not greater than necessary," to meet the traditional purposes of criminal sentences.  *See United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir. 2006) (explaining that the district court's job is not to impose a "reasonable" sentence, but to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2)).

The above language, also referred to as the "parsimony provision" of §3553(a), has become the "guidepost for sentencing decisions post- *Booker,*" *United States v. Ferguson,* 456 F.3d 660, 667 (6th Cir. 2006).  Thus, a sentencing judge must make "an *independent* determination of what sentence is sufficient, but not greater than necessary, to comply with the

7

purposes of § 3553(a) ... taking into account the advisory Guidelines range, the relevant § 3553(a) factors, and any other nonfrivolous arguments presented in support of a particular sentence." *United States v. Wilms,* 495 F.3d 277, 282 (6th Cir.2007) (emphasis in original).

A district court is required to engage in a two-part sentencing procedure. First, the sentencing judge must be assured that the Guidelines sentence is properly calculated. After calculating the Guidelines range, a district court must give both parties an opportunity to argue for whatever sentence they deem appropriate, and then consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by a party. *Gall v. United States,* 128 S.Ct. 586, 596 (2007); *United States v. Dale,* 498 F.3d 604, 611-12 (7th Cir. 2007). But, as the Seventh Circuit has recently explained, this procedure demands that the court "sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a Guidelines sentence." *United States v. Sachsenmaier,* 491 F.3d 680, 685 (7th Cir. 2007). Indeed, the district court's task is to "consider" the seven listed factors contained in § 3553(a), and then to employ that consideration in arriving at a sentence that coincides with the parsimony provision, (i.e., is sufficient but not greater than necessary to accomplish the retributivist (just deserts/punishment) or utilitarian (promoting respect for the law/deterrence, protecting the community, rehabilitation) theoretical purposes of sentencing listed in § 3553(a)(2)). *See United States v. Ortiz*, 502 F.Supp.2d 712, 714 (N.D.Ohio 2007).

If a district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall,* 128 S.Ct. at 597; *United States v. McIlrath,* 512 F.3d 421, 426 (7th Cir. 2008). The further a sentence varies from the advisory Guidelines range, the more

8

detailed the district court's explanation must be. *Gall,* 128 S.Ct. at 597 ("[A] major departure should be supported by a more significant justification than a minor one."); *United States v. Wachowiak,* 496 F.3d 744, 749-50 (7th Cir. 2007).

The Probation Department calculated Medford's advisory Guidelines range to be 37 to 46 months, the court's review of the calculation confirms that it is accurate, and Medford's argument that it be reduced fails for the reasons already discussed.  Accordingly, we turn next to Medford's implied contention that §3553(a) factors justify a sentence less than the advisory Guidelines range.

In imposing the ultimate sentence, the district court must consider all of the factors set forth in § 3553(a).  *United States v. Harris,* 490 F.3d 589, 593 (7th Cir. 2007).  Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the advisory Guidelines range;
> (5) any pertinent policy statements issued by the Sentencing Commission;
> (6) the need to avoid unwarranted sentence disparities; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Of all these factors, Medford's argument for a reduced sentence focuses exclusively on the factors listed in subsections (1) and (2)(A). That is, he believes that a Guidelines range of 37 to 46 months is too harsh given "the nature and circumstances of the offense" and the "seriousness of the offense." The court finds his arguments unavailing.

While it is true that this court has the discretion to impose a sentence that is lesser than (or even greater than) the advisory Guidelines range, this case presents no facts that would move the court to do so. Medford has readily conceded that he was a felon in possession of a firearm and his excuse or explanation for the crime does not warrant a lesser sentence. First, it is well established that a convicted felon cannot possess a firearm for any purpose whatsoever, including for the purpose of protecting himself and/or his family. *U.S. v. Gresso*, 24 F.3d 879 (7th Cir. 1994). Second, Medford admitted that he gave the shotgun to his 15-year-old child to remove it from their home during an apparently volatile situation. One could infer from this admission that Medford feared the weapon could be used to exacerbate the situation between him and his wife. If he had obeyed the law in the first place and not possessed a firearm, since he was forbidden by law to do so, he would not have faced this situation. He also would not have had to hand the weapon to his young son in order to get it out of the house. Instead of supporting Medford's request for a downward departure, the facts and circumstances surrounding his possession of the weapon actually militate *against* any reduction.

The legislative history of 18 U.S.C. § 922(g) reveals Congress' worry about the availability to firearms to certain persons who pose a potential threat to the peace of a community. Congress

10

focused on the rational nexus between violent crimes and possession of firearms by individuals with criminal records. "Felon status is an adequate–even if not exact–proxy to identify 'especially risky people,' whose possession of firearms may be expected to jeopardize public safety. And, because it is rational for Congress to have believed that those who have demonstrated a willingness to break the law in the past should not be trusted with guns in the future, the . . . prohibition on felon possession [need not] be limited only to most menacing subclass of felons." *Black v. Snow*, 272 F.Supp.2d 21, 32-33 (D.D.C. 2003) (citing *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103 (1983) and *United States v. Bass*, 404 U.S. 336 (1971)). The purpose of the felon in possession statute, then, is to prevent firearms from being possessed by persons who have demonstrated a propensity for breaking the law, since their possession of a firearm is deemed more likely to present a danger to society. While it is true that Medford was not apprehended with his shotgun while attempting or planning to commit a crime, the circumstances surrounding his knowing and intentional possession of that gun are troublesome to say the least. By his own account, Medford's possession of the shotgun could have greatly endangered him, his wife and/or his young son. The fact that he thought to remove the weapon from what he termed a volatile situation is commendable–arguably at least–but only so far as it goes. The shotgun should never have been present in the home in the first place and Medford was fully aware of that.

## CONCLUSION

After consideration of the pleadings and the arguments of the parties, the defendant's objection to the Presentence Investigation Report is OVERRULED and his request for a downward adjustment from his Sentencing Guidelines range is DENIED. The court concludes that Medford's Sentencing Guidelines range of 37 to 46 months was calculated properly and that

11

a sentence at the low end of that advisory Guidelines range is "sufficient, but not greater than necessary" to meed the traditional purposes of criminal sentences.

Date: April 21, 2008.

   /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana